**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**KIMBERLY LEE HUBANKS**                                                                        **PLAINTIFF**

V.                              **CASE NO. 4:16-CV-47-BSM-BD**

**CAROLYN W. COLVIN,**
Acting Commissioner,
Social Security Administration                                                                  **DEFENDANT**

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller.  You may file written objections to this Recommendation.  If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

**II.     Introduction**:

Plaintiff, Kimberly Lee Hubanks, applied for disability benefits on September 2, 2012, alleging a disability onset date of April 15, 2008.  (Tr. at 12)  After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application.  (Tr. at 24)  The Appeals Council denied Ms. Hubanks's request for review.  (Tr. at 24)  The ALJ's

decision now stands as the final decision of the Commissioner, and Ms. Hubanks has requested judicial review.

For the reasons stated below, the ALJ's decision should be reversed and the case remanded for further review.

### III.     The Commissioner's Decision:

The ALJ found that Ms. Hubanks had not engaged in substantial gainful activity since her alleged onset date of April 15, 2008. (Tr. at 14) The ALJ found at Step Two that Ms. Hubanks had the following severe impairments: depression, diabetes, lumbar degenerative disc disease, post laminectomy syndrome, and obesity. (Tr. at 15) At Step Three, the ALJ determined that Ms. Hubanks's impairments did not meet or equal a listed impairment. *Id.* Before proceeding to Step Four, the ALJ determined that Ms. Hubanks had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: 1) can lift and carry up to 10 pounds occasionally; 2) can sit for six hours and walk/stand for two hours in an eight-hour workday; 3) needs an option to stand for no more than 10 minutes after sitting 45 minutes; 4) can occasionally stoop, crouch, bend, kneel, crawl, and balance; 5) limited to performing simple, routine, and repetitive work with supervision that is simple, direct, and concrete. (Tr. at 18)

Next, the ALJ found that Ms. Hubanks was not capable of performing past relevant work. (Tr. at 22) Evaluating testimony from the Vocational Expert ("VE"), the ALJ held that, based on Ms. Hubanks's age, education, work experience, and RFC, jobs

existed in significant numbers in the national economy that she could perform at the sedentary level with added limitations. (Tr. at 23-24) Consequently, the ALJ found that Ms. Hubanks was not disabled. (Tr. at 24)

**IV.     Discussion:**

   A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

   B. Ms. Hubanks's Arguments on Appeal

Ms. Hubanks argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ did not assign her the correct RFC, and that if the ALJ had properly evaluated her credibility, the RFC would have included more limitations and would have eliminated from consideration all jobs that the ALJ

determined Ms. Hubanks could perform.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's "residual functional capacity"– that is, what he or she can still do, in spite of severe impairments. The finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted).

The medical evidence in this case supports a more limited RFC than the one assigned. While Ms. Hubanks suffered from other severe impairments, her RFC argument focuses on her back problems, and the severity of that impairment serves as the grounds for reversal. Therefore, the Court limits its discussion to the impairment to the lumbar spine.

A February 2008 MRI of the lumbar spine showed loss of disc space, diffuse disc bulging, and a left paracentral disc protrusion at L5-S1 with left foraminal encroachment. (Tr. at 355) A March 18, 2008 lumbar myelogram showed effacement of the right nerve root sleeve of L5-S1. (Tr. at 308) A CT scan on the same day showed a small left

paracentral herniated disc. (Tr. at 309) On March 27, 2008, Ms. Hubanks saw Dr. P. B. Simpson, Jr. M.D., at South Arkansas Neurosurgery Associates. She complained of aching and cramping back pain that radiated down the thigh and back of her leg. (Tr. at 274) Dr. Simpson found a positive straight-leg raise and a herniated disc with nerve root compression. (Tr. at 276) Ms. Hubanks had foraminotomy surgery on her lumbar spine in March 2008. (Tr. at 279)

There is no evidence of clinical testing again until 2013, and treatment gaps may indicate improvement. An MRI on October 27, 2013, however, revealed mulitlevel disc height loss and desiccation consistent with degenerative disc disease throughout the lumbar spine. (Tr. at 377) There was contact with the nerve roots and disc protrusion at L4-L5 and L5-S1. *Id.* Also in 2013, Ms. Hubanks saw a consultative examiner and complained of lower back pain that wrapped around her hips. (Tr. at 360) The examiner, Dr. Daniel Irons, M.D., found a muscle spasm at the L5 level and positive straight-leg raise. (Tr. at 363) He assigned mild limitation in walking, standing, and sitting, and moderate limitation in lifting and carrying items. (Tr. at 364)

On several occasions in 2014, Ms. Hubanks saw Dr. Wesley Sprinkle, D.O., at Arkansas Specialty Orthopaedics. She complained of constant deep back pain, aggravated by bending, climbing stairs, lifting, pushing, sitting, walking, and standing. (Tr. at 248) She reported muscle stiffness and limping, as well as trouble falling asleep. *Id*. Dr. Sprinkle found diffuse paraspinal tenderness and diagnosed bulging disc and

degenerative disc disease. (Tr. at 250) Dr. Sprinkle gave her multiple steroid injections, which helped with her pain, but did not eliminate it (Tr. at 246-261) Dr. Sprinkle limited her to only occasional walking, standing and lifting no more than ten pounds. (Tr. at 246)

The objective medical testing indicates a back condition that warrants a more limited RFC. The ALJ limited the first hypothetical (out of four total) to sedentary work where the person could have a sit/stand option after 45 minutes. This is the hypothetical he elected to rely on. The evidence of degenerative disc disease, nerve root compression, herniated disc, straight-leg raise, and muscle spasm and tenderness does not indicate that Ms. Hubanks could sit for a full 45 minutes before taking a break, or that she could make it through a workday without several opportunities to lie down. See *Delph v. Astrue*, 538 F.3d 940, 947 (8th Cir. 2008)(where a claimant had degenerative disc disease, positive straight-leg raise, muscle spasms, and walked with a cane, the ALJ determined that he could not perform even sedentary work).

The ALJ offered three additional RFC hypotheticals which resulted in no available jobs: 1) unable to maintain attention and concentration for up to 25 percent of the day; 2) three unscheduled absences a month; and 3) three unscheduled breaks a day of 15 minutes. Any one of these three hypotheticals more closely approximates the limitations experienced by Ms. Hubanks, and the ALJ erred in choosing a hypothetical that did not fully depict her incapacity. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011)(VE testimony constitutes substantial evidence when it is in response to a hypothetical that

captures all the concrete consequences of a claimant's impairments).

The ALJ also erred in his credibility assessment. An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted). The ALJ found Ms. Hubanks's subjective complaints less than credible.

The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). 20 C.F.R. § 404.1529. The ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id*.

With respect to activities of daily living, Ms. Hubanks indicated that she was limited in what she could do. She had to lie flat to take pressure off her back and some days could not get out of bed. (Tr. at 19) She needed help from her mother-in-law with cooking, cleaning house, and laundry. *Id.* She could not attend family events or watch

her son's football games. *Id.* She said her children care for her animals. (Tr. at 201) She had trouble dressing and bathing. *Id.* She drove occasionally, but with pain, and had to have someone help her lift groceries. (Tr. at 202)

In his opinion, the ALJ recited more robust activities Ms. Hubanks could do, but he appeared to disregard the limitations associated with doing those activities, which she set forth in her function report and testimony at the hearing. Her limitations in activities of daily living are consistent with the clinical medical evidence of a back disorder.

Ms. Hubanks regularly took Lyrica and Hydrocodone, plus Aleve and Advil, but the medications caused upset stomach and drowsiness. (Tr. at 39, 40, 42) She reported that her husband had to take over paying bills because she would fall asleep mid-task, as a side effect from the medication. (Tr. at 40) She used heating pads and ice packs, and spent as much time lying down during the day as she could. (Tr. at 36-37) Dr. Sprinkle referred her to a pain clinic to get a pump, but she could not afford to go. (Tr. at 37) Ms. Hubanks said she was told physical therapy would not help her condition. (Tr. at 40) She also reported that she had to quit a job due to her back condition. (Tr. at 35)

Although there is a gap in treatment for Ms. Hubanks, and she did try to work after her onset date, starting in 2013, she sought out treatment and complied with taking medication and restricting her activities. She did not go to a pain clinic because she could not afford to go, but that does not undermine the credibility of her complaints. See *Tome v. Schweiker*, 724, F.2d 711, 714 (8th Cir. 1984)(explaining that a lack of financial

resources can be an independent ground justifying failure to follow medical treatment prescribed to remedy a disabling condition).   The ALJ erred in finding Ms. Hubanks's subjective complaints less than credible.

**V.     Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.  The ALJ erred in his RFC determination and in his credibility finding.  The decision should be reversed and the case remanded with instructions for further review.

DATED this 12th day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE